## MELLA v. NORTHERN S. S. CO.

### (Circuit Court, S. D. New York. June 8, 1908.)

**1. DEATH—PROXIMATE CAUSE.**

Intestate sustained a dislocated shoulder by a fall on defendant's steamship due to defendant's alleged negligence, after which he went to a hospital, where he was given chloroform unnecessarily prior to the reduction of the dislocation. During this operation, intestate died from paralysis of the heart solely due to the chloroform; the injury not being such of itself, independent of the chloroform, as would have caused death. *Held*, that the unnecessary giving of the chloroform, for which defendant was not responsible, and not the injury, was the proximate cause of intestate's death, precluding recovery for death under Code Civ. Proc. N. Y. § 1902, authorizing a recovery of damages for a wrongful act, neglect, or default by which decedent's death was caused, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 26.]

**2. COURTS—FEDERAL COURTS—RULES OF DECISION.**

The federal courts are bound by the decisions of the Supreme Court of the United States.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 325.]

**3. DEATH—RIGHT OF ACTION—NEGLIGENCE.**

In order to render a defendant liable for wrongful death, the death must be the natural, reasonable, and probable result of defendant's negligent act which could have been foreseen.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 19.]

**4. SAME—CONCURRENT ACTS.**

Where intestate was injured by defendant's negligence, but the injury was in no event fatal, and intestate died solely because of the unnecessary and dangerous act of the surgeon employed by intestate in giving him chloroform, for which defendant was not responsible, thdugh done in the course or in connection with necessary surgical treatment, the injury and anæsthetic were, at most, concurrent causes of the death, for which defendant was not liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 26.]

**5. MASTER AND SERVANT—DEATH OF SERVANT—PRECAUTIONS AGAINST INJURY— QUESTION FOR JURY.**

During the process of repairs on a vessel by an independent contractor, a hole three feet long and two feet wide was cut in a passageway, and, while two of the contractor's servants were seated at the edge of the hole, their feet extending therein, engaged in putting up a guard rail around it, intestate, an employé on the vessel, stepped into the hole and sustained a dislocation of the shoulder. *Held*, that the court properly submitted to the jury the question whether defendant was negligent in failing to further guard the hole while the men were working therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1010–1031.]

See 127 Fed. 416.

This action is brought by the administratrix of Louis Mella, deceased, against the Northern Steamship Company, under the provisions of section 1902 of the Code of Civil Procedure of the state of New York, for the benefit of the decedent's wife and next of kin, and to recover damages for the alleged negligence of the defendant, by which it is claimed the decedent's death was caused. The defendant denied negligence, and also denied that the death of the decedent, Louis Mella, was caused by the alleged negligence, even if there was negligence, and gave evidence tending to show that such death was caused by the independent negligence of the physician and attendants at the hospital to which Mella was taken for treatment, or an operation, after the accident occurred.

Rounds & Dillingham, for plaintiff.

Breed, Abbott & Morgan, for defendant.

RAY, District Judge. The section of the Code under which this action is brought reads as follows:

"Action for Death by Negligence. The executor or administrator of a decedent, who has left him or her surviving, a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default. by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued. Such an action must be commenced within two years after the decedent's dee·h." Code Civ. Proc. N. Y. § 1902.

The defendant owned the steamship Northwest, running on the Great Lakes; but, as the season had not opened on the 11th day of June, 1902, she lay at the wharf in Buffalo undergoing extensive repairs. These repairs had been going on for some time and included, among other things, a change of boilers, the cutting of a hole through the main deck for passage below, the putting up of railings and certain changes in and about the culinary department, which last changes were being made at the request of Mella and to some extent under his direction. As Mella was passing along the main deck through a pas-

sage, he turned into a narrow and shorter passage on his way to this culinary department and stepped one leg into a hole. He either fell upon his left hand or elbow, or saved himself by reaching out his left hand; but, as he was a heavy man, the force of the fall was such that his left shoulder was dislocated. This was the only injury received, and the evidence was uncontradicted that this was the simplest and least complicated of the various forms of shoulder dislocations. The plaintiff alleges negligence, in that the defendant failed to furnish a safe place for Mella to work and had this hole in the short passageway mentioned unguarded, and that such passageway was insufficiently lighted.

Mella was taken to the Emergency Hospital in Buffalo, or went there of his own motion, to have the dislocation reduced. He was a large, heavy man, and some one in attendance gave him chloroform, which it is claimed reduced him to a state of coma. The dislocation was then reduced without difficulty, but Mella died under the influence of the chloroform and, as the physicians say, from paralysis of the heart caused by the chloroform. The defendant insisted and gave evidence tending to show: First, that the giving of the chloroform was unnecessary; and, second, that Mella was so negligently cared for while under its influence, no efforts being made to watch and bring him out from under its influence, that he died solely from the unnecessary administration of chloroform and the negligence of the surgeons and attendants having him in charge. The evidence was substantially undisputed that the injury and dislocation were not fatal and would not have been fatal had the patient been left entirely alone with the dislocation unreduced; that the only result would have been a partially disabled condition of the left arm.

The court charged the jury that, to enable plaintiff to recover, the jury must find that the defendant was negligent, that this negligence produced injury to Mella, and that such injury was the proximate cause of his death; also, that death must have been the natural and probable consequence of the injury or accident, and that Mella must have been free from contributory negligence which in any way and to any extent contributed to the injury, if it produced death.

The court also charged that the jury must find:

"That the cause of Mella's death was the injury so affecting his general physical condition and that of his heart, or both, that the chloroform caused death; that is, the injury caused the condition of the heart, etc., that resulted in death from the administration of chloroform."

The court also charged that, if Mella died from paralysis of the heart caused by the chloroform unnecessarily given by the surgeons at the Emergency Hospital, and that paralysis of the heart resulted solely from a diseased condition of the heart and system existing at a time prior to and at the time of the accident, then the accident and injury were not the proximate cause of death, and the plaintiff cannot recover.

The court also charged we cannot trace death to the accident and resulting injury as the proximate cause of such death, if the prior physical conditions, including the conditions of the heart, were such, immediately prior to the injury, that the said unnecessary administer-

ing and effects of the anæsthetic, chloroform, would have caused the death and did cause the death of Mella unaided by the injury or its effects. That is, if the injury had nothing to do with creating or causing or producing the physical condition that caused the chloroform to produce death. That is, if, owing to the prior physical condition of Mella—and it was in no way aggravated by the accident and injury—the chloroform so given solely caused the death, then death was not the result of the injury in any degree, and the accident and injury were not the proximate cause of death and plaintiff cannot recover.

The court also charged that the negligence must have caused death or must have aided to cause death. It is not sufficient that the negligence produced a condition not fatal which set other independent agencies at work, one of which, acting independently of the injury and accident, and acting alone, caused death. That is, it is not sufficient that negligence caused an injury not fatal; that this caused Mella to go to the hospital; that the injury caused the surgeon to operate and give chloroform; that the chloroform alone killed or caused death. The injury itself must, in whole or in part, have produced a physical condition which enabled the chloroform unnecessarily given to cause the death.

. The court also charged the "proximate cause" of death was that cause which in natural and continuous sequence, unbroken by any new cause, produced death, and without which cause that death would not have occurred. Hence, if the pre-existing physical conditions of Mella were such that such giving of chloroform and its effects were alone sufficient to cause death and did cause death, and the accident and injury had nothing to do with producing the physical conditions upon which the chloroform operated or acted in producing death, then the accident and injury were not the cause of death, but the act of another person, or the acts of third persons in giving chloroform was. "Death, in this case, cannot be attributed to the accident and injury, unless you find on the evidence in the case that without their operation on Mella's physical condition death would not have happened." The court also said there must be a fair preponderance of evidence to the effect that the death of the deceased, Mella, was caused by a physical condition produced in whole or in part by the injury and without the existence of which physical condition Mella would not have died. This charge is challenged, and the plaintiff insists that if the defendant was negligent, and that negligence caused injury to Mella, and he went to the hospital for treatment and submitted to a necessary operation, and the surgeons and attendants in charge unnecessarily gave chloroform, which, operating on Mella's physical condition as it was prior to the injury, caused death, such injury was the proximate cause of such death, and that plaintiff may recover.

The court more than once charged that negligent or careless treatment by the physicians and surgeons would not defeat recovery, but also charged, in substance, that if the chloroform was unnecessarily given, and the surgeons and attendants failed and neglected to properly care for Mella and watch him and use precautions to bring him out from under its effect, and in consequence of the giving of such chloro-.

form and negligent treatment and want of care while under its influence solely he died, then the injury was not the proximate cause of death; but the unnecessary giving of chloroform and the negligence of the physicians and surgeons was. In substance, the court charged that in such event death so caused was not the natural or probable consequence of the injury.

The court also charged:

"So if death was caused solely by the chloroform so given, and the physical conditions of Mella, entirely irrespective of the accident and injury, were such that the chloroform caused death, so that the injury or its effects were in no way or to any extent a producing cause of death, plaintiff cannot recover. It is not sufficient that the accident and injury made proper treatment necessary. That would be a remote cause, but not, in the case stated, the proximate cause, and for such remote cause the defendant is not liable, provided an efficient independent cause intervened and caused death."

In 1 Cooley on Torts (3d Ed.) 567, discussing the subject "Actions for Causing Death by Wrongful Act," etc., the author says:

"Proximate cause: The wrongful act, neglect, or default, must have been the proximate cause of death. But it is the proximate cause if it inflicts a fatal injury though the death that would have resulted is anticipated by an unskillful surgical operation."

He cites Sauter v. N. Y. C. & H. R. R. Co., 66 N. Y. 50, 23 Am. Rep. 18; Nagel v. Miss., etc., R. R. Co., 75 Mo. 653, 42 Am. Rep. 418; Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Beauchamp v. Saginaw Mining Co., 50 Mich. 163, 15 N. W. 65, 45 Am. Rep. 30.

This is not a case where the decedent was fatally injured, or where the injuries were such that they might have resulted in death. All that can be claimed is that the injuries were of such a nature that: (1) Medical and surgical treatment were necessary, the anæsthetic being necessary for the relaxation of the muscles of Mella to facilitate the reduction of the dislocation; and (2) that as such giving of chloroform was necessary and made necessary and proper by the negligence of the defendant; and (3) as the giving of such chloroform resulted in death or caused death; and (4) that therefore there was such a connection between the accident and consequent injury and the death as made the death the proximate result of the accident. This the court conceded, assuming the necessity of administering chloroform, and charged, in substance, that to defeat recovery: (1) The chloroform must have been unnecessarily given; and (2) that it, so given, operating on a pre-existing physical condition, not induced or produced in any degree by the injury, solely must have caused death. The court charged, in substance, that, even if the chloroform was unnecessarily given and caused death, still if the pre-existing physical condition of Mella was such that its operation thereon, aided in any degree by the injury, caused death, then the injury was the proximate cause of death. The court, in substance, charged that if Mella died from paralysis of the heart, as the surgeons say he did, and such cause of death, paralysis of the heart, was solely produced by the unnecessary giving of chloroform at the hospital, then the injury was not the proximate cause of death. In short, the charge was that the injury, to be the proximate cause of death, must have had something to do with causing physical condi-

tions which enabled the chloroform, if unnecessarily given, to cause paralysis of the heart and consequent death.

If the injury made the giving of chloroform necessary, if it was therefore given, if paralysis of the heart followed, and death resulted, then the injury caused the death. In such event, it is immaterial what Mella's physical condition was prior to or even after the accident.

If such injury did not require the giving of chloroform, if it was unnecessarily given, and if it, thus given, unaided by the conditions produced by the injury, caused death, then how did the injury have anything to do with causing the death, except indirectly, in that it brought Mella into the hands of the surgeon and enabled him, by giving unnecessary drugs, to cause death by such independent means? Is such a death so caused the natural and probable result of such an act of negligence, of such an injury; the injury not being a fatal one?

In 1 Cooley on Torts (3d Ed.) 566, it is also said:

"In most cases the question of the right to recover is merely a question of negligence, and is to be governed by the same principles and considerations as questions of negligence when the results were less serious."

The author (1 Cooley on Torts [3d Ed.] pp. 101, 102), in discussing "Proximate and Remote Cause," lays down three propositions, viz. (the first relates to distinct legal wrongs which in themselves constitute the invasion of the rights of others, and will not be quoted):

"(2) When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown, but it must be so connected by averment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events, and as a proximate result of a sufficient cause.

"(3) If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote."

Therefore in this case death must have resulted from the negligence and injury received in the accident according to the ordinary course of events, and the cause must have been a sufficient one. Or the negligence resulting in the death of Mella, we will say, so resulted through the intervention of other causes. What causes? The unnecessary— that is, the negligent and wrongful—giving of chloroform, a poisonous agent injurious and often destructive to life as the evidence shows. Hence, if the chloroform was unnecessarily given, and it alone caused death, then the accident and injury to the shoulder caused death only in consequence of the intervention of this distinct wrongful act or omission of the surgeon and attendants at the hospital in unnecessarily giving chloroform, and so the death "shall be imputed to the last wrong as the proximate cause, and not to that which was more remote," the dislocation of the shoulder; the last cause being the sole cause of death. This is the plain holding in Wood v. Pennsylvania R. R. Co.,

177 Pa. 306, 35 Atl. 699, 35 L. R. A. 199, 55 Am. St. Rep. 728, where it is decided:

"In order to warrant a finding that negligence, or an act not amounting to wanton wrong, is a proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. If the original act was wrongful, and would, naturally according to the ordinary course of events, prove injurious to some others, and result, and does actually result, in injury, through intervention of other causes not wrongful, the injury shall be referred to the wrongful cause, passing through those which were innocent."

See, also, West Mahonoy Township v. Watson, 116 Pa. 344, 9 Atl. 430, 2 Am. St. Rep. 604, and Hammill v. Pennsylvania R. R. Co., 56 N. J. Law, 370–377, 29 Atl. 151, 24 L. R. A. 531.

To defeat recovery there must be two wrongs, two negligent acts, and the last, that of a third party, must be the sole cause of the death. In such case the last negligent act is the proximate cause of the injury that results in death. Hammill v. Pennsylvania R. R. Co., 56 N. J. Law, 377, 29 Atl. 151, 24 L. R. A. 531. If they co-operate in producing death, then recovery is not defeated.

Again, says Cooley, at page 99:

"It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate and not the remote cause of any event is regarded; and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not to the remote cause. The explanation of this maxim may be given thus: If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. * * * If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

The result (that is, the death) must be the natural and probable consequence of the act, one which could have been foreseen in the light of the attending circumstances if the act does not amount to wanton wrong. Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Wood v. Pennsylvania R. R. Co., 177 Pa. 306, 310, 311, 35 Atl. 699, 35 L. R. A. 199, 55 Am. St. Rep. 728; West Mahonoy Township v. Watson, 116 Pa. 344, 9 Atl. 430, 2 Am. St. Rep. 604; Bishop's Noncontract Law, § 42, quoted and approved in Laidlaw v. Sage, 158 N. Y. 98, 99, 52 N. E. 679, 44 L. R. A. 216; Lowery v. Manhattan R. R. Co., 99 N. Y. 158, 1 N. E. 608, 52 Am. Rep. 12.

In West, etc., v. Watson, supra, the negligence of the town in leaving the pile of ashes in the street, and which caused the horses to run away, did not set in operation the engine on the railroad track, which ran upon and killed the horses while so running away; but the running away of the horses, caused by the negligence of the town, was

one continuous act, and but for such negligence the horses would not have been killed. There the horses were killed by the concurring results of two acts: (1) The negligent act of the town in causing the horses to run away; and (2) the subsequent act of the railroad company, a third party, not negligent in running upon them while so running away and while running upon the tracks of the company. The court said:

"The facts being undisputed, the court should have instructed the jury that the negligent act of the township was the remote and not the proximate cause of the loss of the horses, and for this loss the township was not liable."

Wood v. Pennsylvania R. R. Co., supra, is more in point, for the reason that there the defendant railroad company had control of all the agencies causing the injury. The plaintiff was on the railroad station platform, having purchased his ticket, waiting for his train. The incoming train, running at a negligent rate of speed, without giving warning of its approach, struck a woman who was crossing the track and threw her body against plaintiff and injured him. Held, that the injury was not the natural and probable consequence of the negligence, and hence the negligence was not the proximate cause of the injury to the plaintiff. It was also held that under the evidence the woman killed was negligent, and hence, as her negligence intervened and caused plaintiff's injury, even if the railroad company was running at a negligent rate of speed and without giving warning of its approach, the proximate cause of plaintiff's injury was the negligence of the woman. While the accident would not have happened, either to the woman or to the plaintiff, but for the negligence of the railroad company, still, first, the resulting injury was not the natural and probable consequence of the negligence, and, second, the negligence of the woman killed, and not that of the railroad company, was the proximate cause of plaintiff's injury.

It must be conceded, I think, that there is some conflict between this last case and Hammill v. Pennsylvania R. R. Co., 56 N. J. Law, 370, 29 Atl. 151, 24 L. R. A. 531. But this is not important, as this court followed Hammill v. Pennsylvania R. R. Co. in the case at bar. It repeatedly charged that the unnecessary giving of chloroform must have been the sole cause of death. In that case the plaintiff was rightfully on a way which the general public had the right to use, but the fee of which was owned by the defendant railroad company. The defendant's train was running negligently and struck a man, one Barry, who, carrying a basket of tools, was negligently trying to cross the tracks of the defendant. Barry was struck by the train, the tools scattered, and some of the flying tools struck the plaintiff and injured him. Held, that defendant was responsible. The act of Barry, the person carrying the tools, was not the sole or independent cause of the injury to the plaintiff. The negligence of the railroad company and the negligence of Barry co-operated at the same time to injure the plaintiff. Here were really two proximate causes of the injury, each a negligent act, concurrent in point of time and co-operating to produce such injury. The court in its opinion said (page 377 of 56 N. J. Law, page 153 of 29 Atl. [24 L. R. A. 531]):

"But it is contended that this negligent conduct of the defendant, conceding it to exist, was not the proximate cause of the injury. The contention is that the negligence of Barry, in placing himself carelessly in front of the locomotive, with the box of tools on his shoulder, was the independent and proximate cause of the injury. It is true that Barry's negligence contributed to his own death, and the trial judge instructed the jury that his negligence tended to the production of the injury received by the plaintiff, and that if Barry's negligence stood alone as an independent cause of the injury there could exist no right of recovery on the part of the plaintiff; but it was submitted to the jury whether the statutory signal was given or not, and, if not given, that was negligence on the part of the defendant, and, if it co-operated with the negligence of Barry in producing the injury of the plaintiff, a right of recovery existed; but if it did not co-operate with the negligence of Barry in producing the injury to the plaintiff, then no right of recovery in the plaintiff existed. If the injury was the result of the joint negligence of the defendant and Barry, a liability on the part of the defendant ensued. It is premised that this was a proper submission to the jury upon the evidence in the cause, and that the law as applicable was properly stated to the jury."

When the separate negligent acts of two parties, both in full operation, combine to cause an injury to a third person, either or both are responsible for the injury, and it is immaterial which negligence commenced its operations first. Washington & Georgetown Railroad v. Hickey, 166 U. S. 526, 527, 17 Sup. Ct. 661, 41 L. Ed. 1101.

In Sauter v. N. Y. C. & H. R. R. Co., 66 N. Y. 50, 23 Am. Rep. 18, an action under the statute, plaintiff's intestate received an injury, hernia, which, without the intervention of surgical treatment, necessarily would have resulted in death. It was necessarily a fatal injury. Surgeons were employed and found that a surgical operation was the only means of saving his life. They necessarily operated, and by a mistake or error in replacing the intestine pressed it into an abnormal cavity, for the existence of which they were not responsible, and, as a consequence, it was assumed, the patient died. It was contended that the injury was not the proximate cause of death. The court said:

"To bring a case within the principle claimed, the general rule is that the actual injury (causing death) must be occasioned by the intervention of some responsible third party or power. Wharton on Neg. § 134. I do not think that the mistake of the surgeon can, in any sense, be regarded as such. The employment of a surgeon was proper, and may be regarded as a natural consequence of the act, and the mistake, which it is evident might be made by the most skillful, may be regarded of the same character. * * * Here it is sought to shield the wrongdoer because the deceased failed to procure relief, although he used the usual and best available means for the purpose. He would have died without an operation. Assuming that by the mistake of the surgeon the operation was not successful, can it be justly said, in the first place, that the surgeon, and not the injury, killed him; and, in the second place, that the surgeon is to be regarded as a responsible intervening third person within the rule referred to? There is no authority that approaches such a proposition. Hence there was no error in refusing to charge that, if death was proximately caused by pressing the intestine into the abnormal cavity, the plaintiff could not recover. The court had charged that, if the hernia was not the proximate cause of death, the plaintiff could not recover, nor unless it was caused by the defendant. The court also charged that, if death was produced by the error, ignorance, blunder, or maltreatment of the surgeon, the plaintiff could not recover. The case was quite as favorable to the defendant as the case would warrant."

There was no request to charge that, if the intestine was unnecessarily or negligently or wrongfully pressed into the abnormal cavity, the

plaintiff could not recover. In effect, the court charged just that as we have seen, and that was approved by the Court of Appeals. In any event, the injury, necessarily fatal, and necessary treatment, caused death.

In the case now before the court, the jury was charged that mere error or negligence in giving necessary treatment or performing necessary operation would not defeat recovery. It was charged that if the giving of a drug of the dangerous character and nature of chloroform was unnecessary, and it solely caused death, and the injury had nothing to do with causing death, this unnecessary act, this wrong, would be the independent intervening act of a third person and the proximate cause of the death. I take it that the surgeons and attendants in a hospital are not immune from the charge of being the intervening third person causing death, and not immune from the charge of causing the death of a patient therein by their own independent and wrongful acts, even if connected with a necessary operation. If they are, then they may experiment with and upon every patient and unnecessarily give dangerous drugs and unnecessarily perform dangerous operations, and, if such drugs and operations so unnecessarily given or performed kill, are the sole cause of death, then the persons whose negligence caused a slight injury requiring some slight operation must answer for the consequences of such experiments and unnecessary operations and respond in damages for the death on the ground that their negligent act "set the surgeon and attendants in motion," or rather gave them an opportunity to experiment and try titles with death-dealing instrumentalities. All surgeons and physicians are liable to make mistakes and err in treatment or operations, and these errors or mistakes are the natural and probable consequences of negligence causing injury if such injury requires treatment. But, I take it, that the unnecessary giving of a poisonous drug and death therefrom are neither the natural nor the probable consequences of injury from negligence or of medical treatment made necessary thereby and which, of course, is a natural and probable consequence of injury. In legal contemplation, negligent parties must be responsible for injury, necessary medical treatment, or surgical operations, and mere errors of the physicians and surgeons in doing necessary things, as all these are natural and probable results, happenings; but I know of no case holding that unnecessary treatment with dangerous drugs, which the jury found this was, is either the natural or the probable consequence of injury. It strikes me that such treatment is both unnatural and improbable. If not, it ought to be so declared. Dangerous necessary treatment is a natural and a probable consequence of injury, and so are dangerous necessary operations; but the unnecessary giving of chloroform, dangerous to life, a drug that causes 90 per cent. of all deaths from the giving of anæsthetics, as the evidence shows, and consequent death from such unnecessary action, are not the natural or the probable results of accidents and injuries.

It is not natural for a physician or a surgeon to give chloroform unnecessarily, and it is not probable that he will. Injury and the giving of dangerous drugs unnecessarily and death caused solely by such unnecessary act "are not known by common experience to be naturally

and usually in sequence." Quite the contrary. So here the negligence, the dislocation of the shoulder, the going to the hospital for treatment, the unnecessary giving of chloroform, and death from the chloroform so unnecessarily given, solely, "are not known by common experience to be naturally and usually in sequence," and hence the damage or death did not, according to the ordinary course of events, follow from the wrong, the negligence. The break in natural and probable sequence comes at the unnatural and unnecessary giving of chloroform, an improbable act, an improbable consequence of the negligence and injury.

Lowery v. Manhattan Railway Co., 99 N. Y. 158, 1 N. E. 608, 52 Am. Rep. 12, in no way is in conflict with these views. There the defendant negligently dropped live coals upon a horse attached to a vehicle. The horse ran away. The driver attempted to arrest his progress by turning against the curb. The horse did not stop, but ran upon the sidewalk and over the plaintiff, who was thereon, and injured him. The driver did the best he could. He may have erred in judgment, but he was guilty of no negligence, and he committed no wrong. It was necessary and proper for him to do the best he could to stop the horse. The running of the horse anywhere where there was an open space was the natural and probable consequence of dropping fire upon him. Even if the driver's act did intervene and cause the horse to go upon the sidewalk, it was an innocent act, and under rule 3 of Cooley, supra, the injury is referred to the wrongful act of the defendant, passing by the innocent one which intervened.

In Ehrgott v. Mayor, etc., 96 N. Y. 264, 48 Am. Rep. 622, the plaintiff drove into an open ditch in the street on a dark rainy night and was injured. His wagon being broken, he procured another and drove home, several miles, in the cold and rain. The jury found the plaintiff was without fault or negligence, but that the drive and exposure aggravated the injury received in the accident. I do not find here the interposition of the act of any third person. The plaintiff went home rightfully, and he did nothing to cause an injury. Injury, strain, and exposure and an aggravation of the injury from the cold and exposure which came from existing conditions of the weather, and not from the wrong of a third person, were the natural and proximate results of such an accident and injury. If, injured as he was, he had gone to a hospital, and some physician had there unnecessarily and ignorantly given him an ice bath, causing pneumonia and death, the unnecessary ice bath being the sole cause of death, would the city have been liable for such death? Would that death, caused in that way, solely by the unnecessary ice bath given by the doctor, have been the natural and probable result of such negligence of the city and the consequent injury? Would or would not the intervening, unnecessary and dangerous giving of the ice bath have been the proximate cause of death? The wrong of the city in leaving the ditch unguarded would only have become injurious, in the sense of causing death, in consequence of the distinct wrongful act of the doctor, and hence, within Cooley's third rule, the death would be imputed to that, the last wrong, as the proximate cause of death. It must be remembered that in actions under this statute "death" is the result that must follow the

negligence and be caused by it, although such negligence need not be the sole cause. It is not sufficient that the negligence cause an injury. The negligence must cause death, either instantly, or must cause an injury or disease, which injury or disease, in whole or in part, must cause death. Hence the accident and injury must be the proximate cause of the death. Death is the injury causing damage for which the administrator may recover.

. Scheffer v. Railroad Company, 105 U. S. 249, 26 L. Ed. 1070, was an action under a similar statute for damages caused by death, which death was alleged to have been caused by an injury resulting from the negligence of the railroad company. It was alleged that the negligence caused injury, which injury directly caused insanity, and that such insanity caused the decedent to take his own life, and that therefore the negligence caused death. The Supreme Court of the United States held that the accident and injury were not the proximate cause of death, but that the act of the decedent was, and that the plaintiff could not recover. The court also said:

"The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train."

So here the unnecessary giving of chloroform, which caused paralysis of the heart, and which in turn caused the death of Mella, could not have been foreseen or anticipated in the light of the circumstances attending the negligence of defendant, if it existed. This case is cited and approved in Washington & Georgetown Railroad v. Hickey, 166 U. S. 528, 17 Sup. Ct. 661, 41 L. Ed. 1101, Accident Insurance Co. v. Crandal, 120 U. S. 532, 7 Sup. Ct. 685, 30 L. Ed. 740, and is also cited and followed in Hailes v. Texas & Pac. R. Co., 60 Fed. 557, 9 C. C. A. 134, 23 L. R. A. 774, where it was held:

"Where a passenger on a railroad train receives no bodily injury from an accident caused by the company's negligence, but is made insane by the excitement, hardship, and suffering resulting therefrom, the company is not liable in damages therefor, since insanity is not a probable or ordinary result of exposure to a railroad accident."

In Daniels v. N. Y., N. H. & H. R. Co., 183 Mass. 393, 67 N. E. 424, 62 L. R. A. 751, it was held that, where the deceased was made insane by the accident and injury, and while so insane voluntarily committed suicide, this was such a new and independent agency of death as to prevent recovery. Here the decedent was injured August 12th and died October 3d following.

In Carter v. Towne, 103 Mass. 507, the defendant negligently sold gunpowder to a boy, who took same home, and it was placed in a cupboard with the knowledge of his aunt, who had him in charge. A week later, his mother gave him some of the powder, and he fired it off. Some days later, with his mother's knowledge, he took more of the powder and fired it off and in so doing was injured thereby. It was held that the wrongful act of selling gunpowder to such a boy was not the proximate cause of his injury. It is clear that the negligence of the mother intervened and was the proximate cause of the

injury. There the negligence of the seller of the powder set the whole train of events in motion, set the mother in motion; but her negligence was an independent act. In the case at bar, in the same sense only, the accident and dislocation, negligence and its immediate consequences, set the surgeon and attendants in motion; but in no legitimate sense did they set them in motion to do an unnecessary and dangerous thing, a grossly negligent and entirely unnecessary act which operating alone and independent of the injury caused death as the jury found.

In Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256, the court said:

"The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

Here death is the injury for which damages may be recovered, and such death must result from, be caused by, the injury more directly caused by the negligence. The one must produce the other. But here the jury found, on abundant evidence, that the accident and injury, dislocation, caused by the accident, had nothing whatever to do with causing or producing the death. The jury found that the subsequent unnecessary administration of chloroform solely caused death; that the accident and injury to the body in no way affected or aggravated the physical condition of Mella so as to cause or induce the chloroform to produce injurious or fatal effects. The chloroform unnecessarily given solely caused paralysis of the heart, and paralysis of the heart caused death. Therefore the unnecessary and consequently the negligent and wrongful act of the surgeon and attendants intervened between the negligence and injury, death, as the sole and efficient cause of such death. Chloroform, unnecessarily given, became the active, producing, and efficient and sole cause of death. It was not a mere mistake or error of the surgeon and attendants, but an unnecessary and an uncalled for act, a thing not demanded or required by the situation and condition of Mella. To have been necessary, the administering of chloroform must have been "such as would be; that cannot be otherwise." Or (2) "such that it cannot be disregarded or omitted; indispensable; requisite; essential; needful; required." Century Dictionary. And I repeat and emphasize that an unnecessary act of that character, not precautionary, but most hazardous, was neither natural

nor reasonable nor probable. It could not have been anticipated or foreseen. To be the proximate or efficient cause, it must necessarily set the other causes in operation. Says the court in Insurance Company v. Boon, 95 U. S. 117, 130, 24 L. Ed. 395:

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation."

Later in the opinion this was again emphasized, where the court said:

"In the present case, the burning of the city hall and the spread of the fire afterwards was not a new and independent cause of loss. On the contrary, it was an incident, a necessary incident and consequence of the hostile rebel attack on the town—a military necessity caused by the attack. It was one of a continuous chain of events brought into being by the usurped military power—events so linked together as to form one continuous whole."

Here there can be no pretense that the primary injury, the dislocation, necessarily set the unnecessary act, the ultimate act which directly caused the death, the ultimate injury, in motion. To say that a negligent act and comparatively slight injury, not fatal in any event, necessarily sets in motion the unnecessary act of another person which of itself, acting independently and alone, causes death, is an incongruity, an absolute contradiction, an absurdity.

The federal courts are bound by the decisions of the Supreme Court and follow them with fidelity. The Supreme Court and the Circuit Courts of Appeal in numerous cases have laid down and reiterated the rule that the final result, the death, must be the natural, the reasonable, and the probable result of the negligence, one that could have been foreseen, else the negligence is not its proximate cause. The rule has been stated in various ways, but always to the same effect.

Thus, in Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256:

"It is generally held that in order to warrant a finding that the negligence, or an act not amounting to a wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

This is quoted and followed in Jarnagin v. T. P. A. of America, 133 Fed. 892–894, 66 C. C. A. 622, 68 L. R. A. 499, and in Lauterer v. Manhattan R. Co., 128 Fed. 545, 63 C. C. A. 38.

In Hoag v. Railroad Company, 85 Pa. 293, 27 Am. Rep. 653:

"The true rule is that the injury must be the natural and probable consequence of the negligence, such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from the act."

In Empire State Cattle Co. v. Atchison, T. & S. F. R. Co. (C. C.) 135 Fed. 135:

"To give a right of action for an injury on the ground of defendant's negligence, the injury must have been the natural and probable consequence of such negligence, and such as, under the circumstances of the case, might and ought to have been foreseen."

In U. S. F. & G. Co. v. Des Moines Nat. Bank (Eighth Circuit) 145 Fed. 273, 280, 74 C. C. A. 553:

"Negligence is actionable only when the loss or injury proximately results therefrom, and to be thus proximate the loss or injury must be a natural and probable consequence which ought to have been foreseen or reasonably anticipated in the light of the attendant circumstances."

In Cole v. German Savings & Loan Association, 124 Fed. 113, 119, 121, 59 C. C. A. 593, 595 (63 L. R. A. 416):

"An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that probably would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable, and such an act of negligence is the remote cause, and the independent intervening cause is the proximate cause, of the injury. * * * But the concurring negligence of another cannot transform the remote into the proximate cause of an injury, or create or increase the liability of the defendant. It cannot make an injury which was not the natural and probable result of the negligent acts or omissions of the defendant their natural and probable consequence. No act contributes to an injury, in the legal acceptation of that term, unless it is a proximate cause of that injury, and no one is liable for an injury unless it was the natural and probable result of his act."

In this case the defendant was negligent in that its elevator was in a hall so dark that it was difficult to see it when at the lower floor. The door into the elevator was not fastened, was often open a little way when the elevator was at the floor above. At such times nothing but darkness was visible in the well. And no precautions were taken to keep interlopers and trespassers from the hall or from intermeddling with the elevator door. The plaintiff entered the hall and passed towards the elevator. A boy who frequently loitered about, and who had been seen to operate the elevator once and to ride upon it several times, hurried past and threw the door into the elevator wide open, whereupon the plaintiff, supposing him to be the attendant, passed in and fell to the bottom of the well, the elevator being above, and was severely injured. Held, that the negligence of defendant was not the proximate cause of the plaintiff's injury, but that the wrongful or mischievous act of the boy was. It is perfectly apparent that the negligence of the defendant, in a sense, set the boy in motion, or rather permitted him to act as he did, and that it was negligent to have him about. If the defendant had not been negligent, the boy would not have been there, and the door could not have been thrown open by the boy. If the defendant had not been negligent in failing to light the hall, the wrongful act of the boy would not have caused injury, as the plaintiff would have seen that the elevator was not there and would not have stepped in. Still, it was the act of the boy, for which defendant was not directly responsible, that immediately and directly caused plaintiff's injury. His negligence intervened between that of the defendant and the injury and directly caused it. A violation of duty by this boy and injury to others was not the natural or probable consequence of defendant's negligence and could not reasonably have been anticipated, said the Circuit Court of Appeals. So in the case at bar the unnecessary giving of chloroform, and the consequent paralysis of the heart of Mella, and the resulting death, were neither the natural, reasonable, nor probable consequences of defendant's negligence. Such

an act and such a result could not have been anticipated. Death from such a cause could not have been reasonably anticipated any more than insanity and suicide from the negligence and injury in the Scheffer Case and the Daniels Case, supra, where, in each case, the negligence of the railroad company caused injury to the head of deceased, which caused insanity, which, in turn, caused suicide or death, the injury complained of.

In People v. Cook, 39 Mich. 236, 33 Am. Rep. 380, a homicide case, the defense was: (1) That the wound was not mortal, and that death was caused by the improper administration of chloroform solely; and (2) that, even if the wound was of itself mortal, the immediate cause of death was morphine poisoning caused by an overdose of that drug, given in course of treatment, and that therefore death was not caused by defendant, and he could not be guilty of homicide. It will be seen that the question involved was the same as here presented: Was the death the result of the shooting and wound in any degree? Was it the natural and probable consequence reasonably to be apprehended or anticipated? The court charged, and the Supreme Court unanimously held, correctly:

"But if the gunshot wound was in itself mortal or reasonably calculated from its nature and extent to produce death, it would be no defense that the deceased, under better or different medical treatment, might have recovered; nor will the law justify a verdict of not guilty merely upon the ground that the medicines administered to restore or relieve the deceased, in point of truth, did co-operate with the wound in producing death. It would be enough if the gunshot wound contributed mediately or immediately to the death, but, on the other hand, if the gunshot injury was not a mortal one in itself, not reasonably calculated to produce death from its nature and extent, and death ensued, not from it, but solely from morphine poisoning, to which the injury did not materially contribute, the defendant could not in that case be convicted."

The Supreme Court also held:

"In a case where the wound is not mortal, the injured person may recover and thus no homicide have been committed. If, however, death do result, the accused will be held responsible, unless it was occasioned, not by the wound, but by grossly erroneous medical treatment."

So in the case at bar, as the direct injury caused by the negligence was not in any sense possibly fatal, Mella might have recovered in which case no death would have ensued and no cause of action would have arisen. However, as death followed, caused by paralysis of the heart, which was caused solely by the unnecessary administering of chloroform ("grossly erroneous medical treatment"), the injury in no way contributing to that result or to physical conditions which induced or aided in bringing about that result, the negligence of the defendant did not cause or produce the death, or even contribute to it. The jury was correctly charged that if it so found the facts then the negligence was not the proximate cause of the injury. The questions of fact were left to the jury.

It is not sufficient that the negligence produces a condition which opens the door to another cause. Daniels v. N. Y., etc., Railroad, 183 Mass. 397, 67 N. E. 425 (62 L. R. A. 751), where it is said:

"We are thus brought to the consideration of the question, which is often very difficult to decide, whether an essential condition precedent is the active, efficient, proximate cause of a subsequent event, or is only a producer of conditions which open the door to another cause which directly and actively produces the result."

In the case at bar the accident and injury, dislocation of the shoulder, were simply producers of conditions which opened the door, gave opportunity for the other, the efficient and sole cause of death, viz., the unnecessary giving of chloroform.

In Southern Railway v. Webb, 116 Ga. 152, 42 S. E. 395, 59 L. R. A. 109, it was held:

"But the better doctrine is believed to be that whether or not the intervening act of a third person will render the earlier act too remote depends simply upon whether the concurrence of such intervening act might reasonably have been anticipated by defendant."

In Seale v. Gulf, etc., R. Co., 65 Tex. 278, 57 Am. Rep. 602, it was held:

"If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authorities seems to be that the connection is not broken."

The intervening, efficient cause of death must be one reasonably to be anticipated.

In Stone v. Boston & Albany R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794, the railroad company was negligent in keeping barrels of oil on its station platform with rubbish, and in allowing both to become completely saturated with leaking oil. The plaintiff was a lumber dealer near by. One Casserly brought a load of freight to be shipped on a car standing on the track and, while at the platform on or engaged in his business, negligently threw a lighted match, with which he had lighted his pipe, under the platform, which immediately took fire, ignited the barrels of oil, which, exploding, scattered oil and fire, which almost immediately spread to plaintiff's premises, whereby his lumber and buildings were destroyed. Here the existing and continuing negligence of defendant was put in active operation by the negligent act of a third person rightfully on the premises of the defendant; but the act of Casserly, such third person, intervened between defendant's negligence and the fire and directly caused it. However, possibly and it may be probably, but for the defendant's negligence the fire which caused plaintiff's injury would not have occurred. The direct exciting cause which put the negligence in operation, made it an active injurious agent, was Casserly's negligence. The court held:

"According to this statement of the law, the questions in the present case are: Was the starting of the fire by Casserly the natural and probable consequence of the defendant's negligent act in leaving the oil upon the platform? According to the usual experience of mankind, ought this result to have been apprehended? The question is not whether it was a possible consequence, but whether it was probable; that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility, applicable to a case like this, has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable,

according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so. * * * Tried by this test, the defendant is not responsible for the consequences of Casserly's act. There was no close connection between it and the defendant's negligence. There was nothing to show that such a consequence had ever happened before, during the eight years covered by the plaintiff's testimony, or that there were any exciting circumstances which made it probable that it would happen. It was, of course, possible that some careless person might come along, and throw down a lighted match, where a fire would be started by it. This might, indeed, have happened upon the plaintiff's own premises, or in any other place where inflammable materials were gathered. But it was not according to the usual and ordinary course of events. In failing to anticipate and guard against such an occurrence or accident, the defendant violated no legal duty which it owed to the plaintiff."

In Seifter v. Brooklyn Heights Railroad Company, 169 N. Y. 254, 62 N. E. 349, reversing 55 App. Div. 10, 66 N. Y. Supp. 1107, the deceased, by the negligence of defendant, sustained a simple fracture of the left fibula. Thereafter he died of septic pneumonia, as the jury found and as the evidence showed, which might have been caused directly by septic poisoning at the point of injury resulting directly from the injury. There was evidence of septic conditions, swellings, etc., in the limb, above the point of injury, not too remote in point of time to have been produced by septic conditions at that point; also of chills, etc., not too remote in point of time to have been caused by septic conditions of the fracture, if they ever existed. There was no evidence that a septic condition ever existed at the point of injury, except what might be inferred from the above facts and the fact that the cause of the septic conditions that did exist was not shown otherwise than by showing the fracture and that it might have caused septic conditions at the point of injury which, if they existed, would extend, etc. Experts expressed the opinion that the septic pneumonia which caused death was caused by the injury, but this was based on the theory that septic conditions did arise and exist at the point of injury of which, as stated, there was no evidence except surmise or guess or speculation, arising from the fact that such conditions sometimes arise from and are caused by such fractures. The court held that there was no evidence to support the finding of the jury that the negligence and injury was the proximate cause of the death. It adopted and reiterated the doctrine enunciated in Laidlaw v. Sage, 158 N. Y. 73, 99, 52 N. E. 679, 688 (44 L. R. A. 216):

"A proximate cause is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible. It is one which can be used as a term by which a proposition can be demonstrated; that is, one which can be reasoned from conclusively. A remote cause is one which is inconclusive in reasoning, because from it no certain conclusion can be legitimately drawn. In other words, a remote cause is a cause the connection between which and the effect is uncertain, vague, and indeterminate. * * * The proximate cause being given, the effect must follow. But although the existence of the remote cause is necessary for the existence of the effect (for unless there has been a remote cause there can be

no effect), still the existence of the remote cause does not necessarily imply the existence of the effect."

There the cause of death was septic pneumonia. This was the direct, immediate, efficient cause. If not cured, death followed as a necessary and probable consequence. But, given a fracture of the left fibula, and no such result follows, such a result is neither the natural nor the probable consequence. The existence of this fracture did not imply either the ultimate result, death, or the existence or causation of the immediate and efficient cause of death, septic pneumonia. If a septic condition grew out of the fracture, an unusual thing, not a natural and a well-known and probable result, then septic pneumonia might ensue and death result. Hence, in the absence of proof that such septic condition did exist or had existed at the point of fracture and thence extended to the lungs, the negligence and fracture stood as the remote cause, if any cause at all, while septic pneumonia, not a natural or probable result of the fracture, stood alone as the active, efficient, proximate cause of death.

Apply the rule in the case before this court. Death is the injury complained of. This death was caused by paralysis of the heart, which was directly caused by chloroform, which was unnecessarily given by an attendant in the Emergency Hospital to which Mella was taken for treatment. Here is the direct, immediate, efficient cause, the unnecessary act of the person or persons at this hospital. Death is a natural and, we assume, a probable consequence of such act. Given that cause and death follows. But, given a dislocated shoulder and death does not follow in any event even if the dislocation is not reduced. Neither the unnecessary giving of chloroform, nor chloroform poisoning, nor paralysis of the heart, caused by such unnecessary act follows as a necessary or probable result of the dislocation and necessary or proper surgical treatment. The eixstence of this dislocation did imply necessary surgical treatment for its reduction. That was a necessary and probable consequence, not to save life, however; but it did not imply the unnecessary giving of that dangerous drug chloroform, which, being unnecessary, was therefore not necessary, or proper, or such as must be, or such as could not be otherwise, or what could not be omitted, or what was, in such a case, indispensable, requisite, essential, needful, or required, and therefore a natural and probable consequence of the dislocation. Hence the negligence and dislocation stand as the remote cause of death, while the unnecessary giving of chloroform stands as the proximate cause thereof. In short, the fact and finding of the jury was that it was "unnecessary." Here, at the point prior to the giving of the chloroform, in considering what was reasonably necessary and probable, what was reasonably to be apprehended as a result or consequence of the negligence, in view of what followed, all idea of necessity ends so far as the actual cause of death is concerned. All that occurred thereafter, except the mere reduction of the dislocation, was unnecessary, not a natural and a probable train and succession of events following from the negligence and dislocation.

The court charged that if the primary injury and necessary treatment had anything whatever to do with causing the chloroform to cause paralysis of the heart and death, then the negligence was the

proximate cause of death. The verdict determined that it did not. There is no pretense that the act of reducing the dislocation produced or had anything to do with producing the paralysis of the heart. Neither the dislocation nor the necessary surgical treatment implied either the ultimate result, death, or the existence and causation of the immediate and efficient cause of death, paralysis of the heart caused by the unnecessary giving of chloroform. To repeat, such act, the sole cause of death, was improbable, unnatural, one not reasonably to be apprehended. Given, the negligence, the dislocation, the hospital, the surgeon and attendants, and necessary and proper treatment, and all that followed was unnecessary, unnatural, improbable, something that could not have been foreseen or reasonably anticipated in the light of the attendant circumstances. It was to be presumed and anticipated that the attendants and surgeons at the hospital would do their duty, do only what was necessary, and that they would not do a dangerous thing unnecessarily. And it is immaterial that the doing of the necessary act, the mere reduction of the dislocation, a simple act that was in no way dangerous or productive of the consequences that followed, was performed while Mella was unconscious and probably dying from the effects of the unnecessary and dangerous act which immediately preceded it. It was the unnecessary act solely which caused paralysis of the heart and death, as the evidence showed and the jury found.

Again, it may be reasonably said that the concurrent negligence of the defendant and of the decedent united to cause death. If Mella was responsible for the unnecessary and dangerous act of the surgeon and attendants in unnecessarily giving the chloroform, this is clearly so, and plaintiff cannot recover. Rider v. Syracuse R. T. Co., 171 N. Y. 139, 153, 154, 63 N. E. 836, 58 L. R. A. 125. Mella, not the defendant, selected the hospital and submitted himself to the surgeon of his own selection. If that surgeon unnecessarily gave him chloroform, it was clearly a negligent and dangerous act which imperiled Mella's life and actually caused his death. The negligence of the defendant made it necessary for Mella to go to a surgeon, but it did not make it necessary or even proper for that surgeon to unnecessarily give that chloroform. For that unnecessary act the defendant is in no way responsible. Defendant did not invite it, or have any reason to apprehend it. But if defendant's negligence made it necessary for Mella to expose himself, take chances, still Mella's agent, selected by him, committed the unnecessary and dangerous act which solely caused the death, and defendant is only responsible for the consequences of such chances as Mella necessarily took in submitting to proper and necessary treatment; such chances as the defendant should reasonably have apprehended; such as were reasonably probable. In the Rider Case, 171 N. Y., at page 153, 63 N. E., at page 840 (58 L. R. A. 125), the court says:

"There must undoubtedly be a causal connection between the negligence of the injured party and the injury itself, but his fault is deemed to be the juridical cause of the injury when it consists of such an act or omission on the part of a responsible human being as in ordinary and natural sequence immediately results in such injury. This is what is meant by the term 'proximate cause' in any inquiry as to the connection of the negligent act with the resultant injury. We may not confound the act with its execution, nor the

entire act with the last part or the final consummation, and by that means make the immediate cause the remote cause. Wharton on Neg. 1874, §§ 73, 155, 323. The defendant's responsibility could not have been determined by looking merely at the consummation of the injury, but the transaction should be viewed in its entirety, and if the deceased was guilty of negligence its effect upon the right of action could not be eliminated from the case after the first contact of the car with the wagon. We recognize fully the force of the rule that the negligence of the injured party is no defense to an action in his behalf when such negligence is connected with the accident only in some remote way and is not a proximate concurrent cause."

In short, I am of the opinion that when one person is injured by the negligence of another, and such injury is in no event fatal, the negligent party cannot be held liable for the consequences of the unnecessary and dangerous acts of the surgeon employed by the injured party, even when done in the course of or in connection with necessary surgical operations. The negligent party is responsible for all errors of judgment, mere mistakes and errors, assuming there is no negligence in employing an incompetent surgeon.

In Searles v. Manhattan R. R. Co., 101 N. Y. 661, 5 N. E. 66, approved in Laidlaw v. Sage, supra, it is held that in an action to recover damages for defendant's negligence, if "it appears that the injuries were occasioned by one of two causes, for one of which the defendant is responsible, but not for the other, plaintiff must fail if the evidence does not show that the injury was the result of the former cause; if under the evidence it is just as probable that it was caused by the one as by the other, he cannot recover." So here, unless defendant was responsible for the unnecessary giving of chloroform which all the physicians said caused the death, assuming there was any other possible cause, as the jury found that the unnecessary giving of chloroform was the sole cause, the plaintiff's case fails. In the following cases there was negligence, injury, and death. The immediate cause of death was disease, pleurisy, tuberculosis, grippe, drowning, consumption, delirium tremens; but there was evidence, where recovery was permitted, that these diseases followed as a natural and probable consequence of the injury, and that there was an unbroken connection between the accident and injury and the disease and death, all of which the court said must be shown: Sallie, etc., v. N. Y. C. R. Co., 110 App. Div. 665, 97 N. Y. Supp. 491; McCafferty, etc., v. Pennsylvania R. R. Co., 193 Pa. 339, 44 Atl. 435, 74 Am. St. Rep. 690 (proximate cause, grippe, or injury received, left to the jury); Weber, etc., v. Third Ave. R. Co., 12 App. Div. 512, 42 N. Y. Supp. 789 (verdict set aside); Turner, etc., v. Nassau Elec. R. Co., 41 App. Div. 213, 58 N. Y. Supp. 490; Hoey, etc., v. Met. St. R. Co., 70 App. Div. 60, 74 N. Y. Supp. 1113 (verdict set aside); Bruss, etc., v. Met. St. R. Co., 66 App. Div. 554, 73 N. Y. Supp. 256; Beauchamp, etc., v. Saginaw Mining Co., 50 Mich. 163, 15 N. W. 65, 45 Am. Rep. 30; Koch, etc., v. Zimmerman, 85 App. Div. 370, 83 N. Y. Supp. 339.

In the Koch Case there was an injury to the head sufficient to cause death, but the plaintiff's intestate was found in the river, from which immersion he took cold and died from acute lobar pneumonia. It was not shown that he fell in the river because of the injury to the head. He would have died from the injury, but as the death

which did occur from another cause, one in no way induced by the injury, except as it weakened his physical condition, anticipated that which would have occurred from the injury, it was held that the injury did not cause death. The case is very much in point here. If a defendant is not responsible for the death of a person fa⁺ ⁻⁻⁻ injured by his negligence in a case where the fatal result is an... .pated by some act of the injured party, or of a third party, not shown to be due to or induced by the negligence, as clearly he is not, how can a defendant be held liable for the death of a person injured by his negligence, such injury being in no way dangerous to life, on the ground that a surgeon, employed by him to treat the injury, unnecessarily gives him a dangerous drug which solely causes death? It would seem to reduce the whole question to the single proposition:

"Is a defendant who negligently injures another, the injury not being fatal, responsible for the fatal consequences of the unnecessary and dangerous acts of a surgeon employed by the injured party to treat such injury which fatal consequences flow solely from the unnecessary act; such unnecessary act having been performed in connection with the treatment?"

As such results are not the natural and probable consequences of the negligence and primary injury caused thereby, as reasonably to be anticipated, I am satisfied that the jury was properly instructed, and that the verdict should stand.

At a later stage the question of the defendant's responsibility f..- the death of Mella was raised in a different form. The fourth juror asked:

"I don't wholly grasp your honor's meaning. If, for example, it was assumed that the anæsthetic in this case, or if it were assumed that the doctor, a regular licensed physician, had improperly administered chloroform and had killed this man, would that be in connection with the original injury, or would the two be separate affairs?"

The court said:

"If at that hospital the doctor unnecessarily, carelessly, and negligently gave that man chloroform, and they carelessly and negligently neglected to take care of him and watch him and bring him out, and it solely caused death, then it is their independent act, for which this defendant is not responsible. That would be the independent act of a third party, causing the death, because you see the defendant here is not responsible for the intervening acts of a responsible third party, which came in and solely caused death."

The plaintiff's then counsel, Mr. Walsh, took an exception, and said:

"Mr. Walsh: I ask your honor to grant me an exception to that, and I ask your honor to charge that if an injury resulted to Mr. Mella by falling into the hole on the steamship Northwest, and the jury be satisfied that the defendant was guilty of negligence, and that the plaintiff was free from contributory negligence—
"The Court: The plaintiff's intestate?
"Mr. Walsh: The plaintiff's intestate was free from contributory negligence in falling into that hole, and if the injury which Mr. Mella received was such that it was proper for him to consult a physician and submit to medical treatment, and he did, and exercised the carefulness of an ordinary prudent man in selecting such physician or surgeon, and that through the carelessness and negligence of the said physician or surgeon death resulted that the defendant would not be discharged; that the negligent act of the said physician or sur-

geon would not be such an independent, intervening cause as to debar the plaintiff from recovery.

"The Court: I decline to charge that, and I will say that it would be an independent act of a responsible third person if that negligence and carelessness, as I have described it in what I have said, solely caused death, because in that event the fact that he was injured, the fact being that that was not a fatal injury, would not be the producing cause of the death. The producing cause would be the independent act of a third person, the wrong of a third person, which this defendant would not be responsible for. I will give you an exception."

The request presented the proposition that suffering as Mella was from a dislocation of the shoulder, not in any event fatal, the defendant was responsible for his death, if, having exercised proper care in selecting a physician, death resulted from the carelessness and negligence of such surgeon or physician. The court had just charged:

"If at that hospital the doctor unnecessarily, carelessly, and negligently gave that man chloroform, and they carelessly and negligently neglected to take care of him and watch him and bring him out, and it solely caused death, then it was their independent act, for which this defendant is not responsible."

The refusal to charge as requested was qualified, and, in substance, the charge was that, if the death was caused solely by the carelessness and negligence of the physician, then defendant was not responsible for such death. The court had charged that the defendant was not relieved from responsibility for the death of Mella, if the injury had anything to do with causing such death, even if the surgeon was careless and negligent in his treatment, but charged that the defendant was not responsible for the death if the careless and negligent treatment solely caused death.

The plaintiff's counsel was insistent in urging that the defendant was responsible for the malpractice of the physician or surgeon and immediately followed what has just been stated by requesting the court to charge that. The court refused, and said:

"I charge you as I have charged before. I cannot charge that as a proposition of law as stated, but I charge you this: That if the act of those physicians and surgeons in giving unnecessarily this chloroform, or giving it necessarily and properly, and then by their affirmative negligence and carelessness, want of attention, amounting to wrong on their part, solely caused this man to die under its influence, that then that was the independent act of a third party, causing death, for which this defendant is not responsible," etc.

This presents the bald proposition:

"Is a defendant who by his negligence, not wanton or willful, injures another, not fatally, responsible for the death of the person so injured caused solely by the carelessness and negligence of the physician selected by the injured person to treat the injury?"

Mistakes and errors by physicians in giving treatment are one thing; negligence and carelessness solely causing death are quite another. I have yet to learn that negligent persons, who by their negligence inflict injuries, not in any event fatal, on others, are responsible for the death of such injured persons caused solely by the negligence and carelessness of the physician called by the injured preson, provided he exercises due care in the selection. To so hold would be to say that

the negligent and careless treatment of a patient by a physician or surgeon and resulting death is the natural and probable consequence of being careless and injuring a person by such negligence. This is not the law. Wade v. City of Mt. Vernon, 123 App. Div. 796, 108 N. Y. Supp. 241, and numerous cases cited.

It is urged that there was error in what was said as to the negligence of the independent contractor. The court repeatedly and from first to last charged that the defendant was liable if it was negligent in not properly guarding or lighting the hole where Mella was injured, assuming that Mella was free from contributory negligence, and that the injury was a contributory cause of death; and, also, that the duty of guarding and lighting the hole could not be delegated, so far as Mella was concerned, even to an independent contractor. There was evidence that an independent contractor had charge of the vessel and of the repairs and changes being made. There was evidence, not contradicted, that after the hole was cut it was securely covered and protected, except when the workmen were at work at and in it. The evidence was uncontradicted that at the time Mella stepped in the hole in the deck two men engaged by the independent contractor were seated in the hole, three feet long and two wide, about, engaged in putting up a guard rail around it. To enable them to do this, they had necessarily removed the cover. The plaintiff's counsel said:

"May I have an exception to your honor's charge to the jury some few minutes ago on the assumption that it was unnecessary for the defendant to furnish any other guard when there were two workmen there?"

In reply the court said:

"I leave it to the jury. I leave it to their common sense and intelligence to say whether with a hole three feet long, if two men were working in it, that was or was not guard enough. Was it negligence of defendant, if defendant did not put up a rail on the outside?

"Mr. Walsh: My point is that it is an exception to the charge on the facts, stating the facts and including a statement that there would be noise from the work that they were doing; it not appearing that there was any noise.

"The Court: I don't know that they said there would be, in drilling into iron, any noise. I will leave that to the jury."

Before that the court had said on the same subject:

"The Court: They could not delegate their duty of due care. The proposition is this: That the defendant should not be held liable in this case for the negligence of an independent third party with which the defendant was not connected at all. Coming back to that subject, gentlemen, in order that you may clearly understand, of course, on the question of a guard, would you expect, would reasonable men expect, that workmen that worked in that hole, if they were sitting in it—is not that guard enough, using your own common sense? A hole three feet long and two feet wide, with two men at work on the edge of it and partially in it, their bodies extending above it, and they are there at work, the machinery making a noise, and if anybody can see at all by looking, could they put up a guard there that would be more efficient than that? Of course, I leave it to you. They had a right to put up their railing. Of course, they were bound to exercise ordinary care in doing it, reasonable care, so that other people should not be injured. If they had cut a hole there and had gone off and left it uncovered in a darkish place, and somebody had come along and stepped into it, it would be a different proposition entirely. So that you should take all the evidence; and this defendant, of course, was under obligations to use precautions, such as would be expected

of an ordinarily reasonable, prudent, careful person, in those regards; but it was not under obligation to stop work there, to cease work."

This is the charge as finally given on that subject, and modified what the court had before inadvertently said in reply to a request to charge. And before that the court had said in regard to the duty of defendant to guard the hole:

"All of that, gentlemen, appeals to your common sense and good judgment, because while this defendant was under legal obligation to provide a safe place for passengers and its employés in which to do their work, and to exercise reasonable care commensurate with the dangers—extraordinary care it might be under certain circumstances—to have a safe place and things in safe and proper condition, still it was not bound to have its vessel in any such condition as that before its employés went on board, if they knew it was not in that condition, if they had warning and knowledge that it was still undergoing repairs and changes and went on board with that understanding and with that knowledge.   *   *   *   There is evidence, and so far as I know it has been uncontradicted, that there was provided for that hole, when they were not working at it, a cover which completely covered it and protected all persons moving there from falling into it. Is there any evidence that it was ever left uncovered or unguarded when people were not at work at the hole, in or about it?   *   *   *   Now, gentlemen, if two men were there, seated in that hole, engaged, with the light that was there, with this machinery that they have described, in drilling holes in that floor, with light enough to see, can you find that there was any negligence on the part of the defendant in having the hole there, with those two men there in it, seated on its edges, engaged in work? Was any other guard required, anything else necessary that a reasonable man in the exercise of reasonable care would have been required to do to give notice to any one coming along in the passage that there was a place that they must look out for? Did the defendant neglect any duty it owed to its employés which it had invited on that boat at that time?   *   *   *   So, gentlemen, you must find, in order to enable the plaintiff to recover, either that the defendant was negligent at that time in not properly guarding that hole, or that it was negligent in not properly lighting that passage."

I find no prejudicial error.

The motion for a new trial is denied.