(85 App. Div. 370.)

### KOCH v. ZIMMERMANN et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

**1. DEATH—PROXIMATE CAUSE.**
Plaintiff's intestate, while free from contributory negligence, was injured by a brick which fell from a building. Some time afterwards, and while intestate had not recovered, he left his home, and fell or sprung into the river and contracted pneumonia, from which he died. *Held,* that in an action for his death it was incumbent on the plaintiff to show that the pneumonia was induced by the original injury.

**2. SAME—EVIDENCE—SUFFICIENCY.**
Plaintiff having abandoned the theory of insanity of intestate, and there being no evidence of the cause of his immersion in the river, the proof failed to establish a chain of events connecting death with the accident as the proximate cause.

**3. SAME—PREPONDERANCE OF EVIDENCE.**
The only evidence in favor of plaintiff being the testimony of plaintiff's physician that he attributed the death to the injury to the head, which was opposed by all the other testimony, a verdict for plaintiff was clearly against the weight of evidence.

Hatch, J., dissenting.

Appeal from Trial Term, New York County.

Action by Margaretha Koch, administratrix, against Jacob A. Zimmermann and others. From a judgment for plaintiff and from an or-

der denying a new trial, defendant Jacob A. Zimmermann appeals.
Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

George Gordon Battle, for appellant.
Jas. A. Allen, for respondent.

O'BRIEN, J. The action is to recover for the death of plaintiff's
husband, alleged to have resulted from his being struck with a brick,
which, through defendant's negligence, fell from a building in course
of construction. Upon the former appeal (Koch v. Fox, 71 App. Div.
288, 75 N. Y. Supp. 913) the facts were set forth and discussed at
length.

The theory then presented, that the plaintiff's intestate was by his
injuries made insane, and while suffering from insanity jumped into
the East river, and as the consequence of the wetting contracted lobar
pneumonia, to which his death was primarily ascribed by the physicians
who then attended him, is no longer in the case, such theory being
abandoned by the plaintiff, and no proof thereof offered. It is true
that here, as on the former trial, the plaintiff testified that after being
injured by the brick on July 10, 1899, her husband was unconscious
and in great pain, and though two weeks later he got better, and in
fact subsequently visited Mt. Vernon, returning about the middle of
September, he still complained of his head, and made strange remarks,
and was restless and could not sleep, and early in the morning of Sep-
tember 15th (the day on which he was subsequently taken from the
river) he resisted her efforts to detain him, and ran from the house.
And the physician who prior to that time had attended him testified
again that the deceased had been in a state of coma, and his injuries
would cause him to have impulses of an abnormal nature,
to be irritable, melancholy, and irrational, and that the headache of
which he complained would indicate meningitis, and that he consid-
ered the injuries as ample to cause his death. This testimony, how-
ever, falls short of proving that insanity existed, and that while insane
the deceased jumped into the river, and in fact the physician admitted
that, when he last saw him, Koch was not insane. As showing,
furthermore, that the plaintiff abandoned the theory of insanity, the
learned judge, upon request, charged, "There can be no recovery by
the plaintiff based on the theory that the deceased, while insane,
sprung or fell into the water and contracted pneumonia, from which he
died," and to this charge no exception was taken.

Upon the present record it appears, from the testimony of the plain-
tiff's experts, that Koch, as the result of being struck on the head by
the brick, received an injury so severe and serious as in all probability
to have finally caused his death in and of itself. After being taken
from the river, Koch was conveyed to a hospital, where he was treated
by the physicians for acute lobar pneumonia which developed, and
where on October 4, 1899, he died. After inquiries made as to his
previous habits and life, the physicians ascribed his death primarily
to lobar pneumonia, and secondly to alcoholism. They testify that he

gave signs of having suffered from some previous injury, and admitted that from his weakened condition he was more susceptible to pneumonia, which was likely to result from the wetting and exposure, and might have entered his system at that time. In this connection it will be noted that the doctor who had attended him immediately after the injury received from the brick testified that he found no indications of pneumonia.

We may, with the appellant, assume that the evidence was sufficient to warrant the finding of the jury that the intestate was struck on the head by a falling brick, through the negligence of the defendant's employés, and that the intestate was himself free from contributory negligence. This leaves, as the principal question on this appeal, the determination of whether or not the cause of the death of the plaintiff's husband was so connected with the injuries as to justify an action by her, as his administratrix, under the statute. Differently stated, we are to determine whether the injury sustained on July 10, 1899, was the sole cause of his death on October 4, 1899, or whether there was a new and intervening cause.

The plaintiff's theory was that the death of Koch was the necessary and proximate result of the injuries to his head, irrespective of the alcoholism or pneumonia, which the doctors in the hospital ascribed as the cause of his death, and that, having made out a prima facie case, they were entitled to go to the jury upon the question of whether or not the injury which he sustained on the 10th of July, 1899, was the necessary and proximate cause of his death. The defendant's theory was that a new and independent cause intervened between July 10, 1899, when he was struck by the brick, and October 4, 1899, when he died. The plaintiff insists that the burden devolved upon the defendant not only of proving the intervention of some new cause disconnected from the primary event, but that such new cause was sufficient in and of itself to cause death. The argument, therefore, is that, assuming that alcoholism and pneumonia caused the death, this was not sufficient to take away from the jury the question of proximate cause, and that it was incumbent upon the defendant to prove that the alcoholism and pneumonia were such as, independent of the primary injury, would have caused the death, and that in this connection the plaintiff proved that the injury to Koch's head from the brick was such as would kill him, and he died as the result of that injury.

Assuming that the injury from the brick would have been sufficient eventually to cause death, the plaintiff, we think, failed to prove that the intestate died as the result thereof. On the contrary, it appears that the man died from pneumonia and alcoholism, or, at least, a verdict to the contrary would be, in our opinion, against the weight of evidence. It is true that the pneumonia might not have been fatal were it not for the weakened physical condition of Koch due to the injuries which he received from the brick. It does not here appear, however, that the pneumonia was induced and caused by the original injury. It was ascribed to the immersion, and it was not shown that the immersion followed from or was the result of the primal injury. As stated, the theory of insanity has been abandoned, and what was said on the former appeal appears even more clearly now, that the in-

testate "may have fallen into the water through his own carelessness, and he may have jumped in through fright or an error of judgment, or to avoid apprehended danger, as well as from other motives, while mentally responsible within the rules stated, and in either case, manifestly, the appellant would not be liable for the consequences."

We think, therefore, that it was part of the plaintiff's case to show, not only that the injury which her husband received was of a character sufficient to cause death, and that he subsequently died, but that he died from the injury received, and that, where it appeared from the preponderance of evidence that the actual cause of death was pneumonia, it was incumbent upon her to show—what she failed to show—that such pneumonia was induced by the original injury. In Weber v. Third Avenue R. R., 12 App. Div. 512, 42 N. Y. Supp. 789, the rule was thus stated:

"It is sufficient if she establishes that this injury set in motion other causes which produced the disease and death, but which, in the absence of this injury, would not have produced it."

In that case the plaintiff's intestate was injured in October, 1894, by being struck by defendant's car, and died of consumption in June, 1895, and the theory of the action was that, as a direct result of the injuries, a tubercular condition was caused which led to his death, and it was held that the testimony presented did not warrant the submission of the case to the jury. A similar case is that of McQuade v. Metropolitan St. Ry. Co., recently decided by this court (May term; 82 N. Y. Supp. 720), wherein it appeared that the plaintiff's intestate was injured in a railway accident, and some six months thereafter died of inflammation of the brain. In the opinion, reversing a verdict in plaintiff's favor, it was said:

"It was incumbent upon the plaintiff to show the direct connection between the injury sustained and the disease from which the intestate died. * * * The intestate had a disease known as otitis, an inflammation of the middle ear. * * * With these two conflicting theories as to the cause of the inflammation of the brain from which the intestate died, it was for the plaintiff to satisfy the jury by a preponderance of evidence that the direct relation of cause and effect was established between the injuries sustained by the accident and the malady which resulted in death, or that the injuries thus sustained set in motion, aggravated, or in some way made efficient as a cause of death a disease which in the absence of the injury would not have produced death."

In Seifter v. Brooklyn Heights R. R. Co., 169 N. Y. 254, 62 N. E. 349, an action brought to recover for death alleged to have resulted from septic pneumonia caused by a fracture, a verdict for plaintiff was reversed, also upon the ground that the evidence failed to show that the accident was the proximate cause of the death; and in the opinion by Chief Justice Parker it was said:

"It will be well to have in mind the rule upon that subject as it was last expressed by this court in Laidlaw v. Sage, 158 N. Y. 73, 99 [52 N. E. 679, 688, 44 L. R. A. 216]: 'A proximate cause is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible. It is one which can be used as a term by which a proposition can be demonstrated; that is, one which can be reasoned from conclusively. A remote cause is one which is inclusive in reasoning, because from it no certain conclusion can be legitimately drawn. In other words, a remote cause is a cause the connection between which and the effect is un-

certain, vague or indeterminate.  *  *  *  The proximate cause being given, the effect must follow.  But although the existence of the remote cause is necessary for the existence of the effect (for unless there has been a remote cause there can be no effect), still the existence of the remote cause does not necessarily imply the existence of the effect.  The remote cause being given, the effect may or may not follow.'  Applying this rule, it will readily appear that the record contains no evidence whatever establishing that the fracture was the proximate cause of the septic pneumonia."

In the case at bar it was not septic but lobar pneumonia to which the death of the intestate was in part ascribed by the physicians, and it was testified that this was induced by the wetting or immersion that he had undergone.  At this point, however, the proof fails entirely in establishing a chain of events extending from the accident to the death, for the immersion was not connected with the accident, the claim that insanity, caused by the accident, led to the immersion, being abandoned.  The record, therefore, fails to sustain the plaintiff's recovery on this ground, and we are left simply to the testimony as to the cause of the death.  On this subject it is true that the plaintiff's physician testified that he attributed the death to the injury to the head, but this is opposed by all the other testimony, which is to the effect that the deceased died of pneumonia.  The preponderance of the evidence being therefore greatly in favor of defendant as tending to show that death was caused by pneumonia, which latter was not connected with the physical injury, the verdict in favor of plaintiff was clearly against the weight of evidence.

Our conclusion is that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except HATCH, J., who dissents.