In the Matter of the Claim of ROSE RIEHL, Respondent, against TOWN OF AMHERST — DEPARTMENT OF HIGHWAYS et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued October 20, 1954; decided December 31, 1954.

*Arthur J. Maloney* and *Percy R. Smith* for appellants. The evidence failed to establish causal relationship between the employment and death. (*Matter of Dworak* v. *Greenbaum Co.*, 261 App. Div. 1022, 287 N. Y. 555; *Carr* v. *Donner Steel Co.*, 207 App. Div. 3; *Matter of Andrews* v. *L. & S. Amusement Corp.*, 253 N. Y. 97; *Matter of Fish* v. *Wickwire Spencer Steel Co.*, 258 N. Y. 539; *Matter of Brady* v. *Holbrook, Cabot & Rollins Corp.*, 189 App. Div. 405; *Matter of Bye* v. *State Ins. Fund*, 279 App. Div. 1105; *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works*, 304 N. Y. 65; *Matter of McCormack* v. *National City Bank of N. Y.*, 303 N. Y. 5.)

*Nathaniel L. Goldstein, Attorney-General* (*Harry Pastor, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. Ample evidence supported the finding of the Workmen's Compensation Board that decedent's causally related cardiac condition was a contributory factor in his death. (*Matter of Lucarelli* v. *General Ry. Signal Co.*, 276 App. Div. 799; *Matter of Lessner* v. *115–119 E. 90th St. Corp.*, 278 App. Div. 881; *Matter of Chambers* v. *Universal Adv. Corp.*, 253 App. Div. 854.)

VAN VOORHIS, J.   Death benefits under the Workmen's Compensation Law have been awarded to the widow of Charles. Riehl, who died from cancer May 1, 1951.  No claim was made that his cancer was caused or aggravated by his employment, but the theory on which the award is based is that heart disease (chronic myocarditis) was a contributing cause of his death.  For about ten years he had been receiving workmen's compensation from the Town of Amherst or its insurance carrier, appellants herein, upon a finding of fact that this heart trouble resulted from falling from a ladder while engaged in trimming a tree as an employee of that town in 1941.  No contest arises concerning the disability payments made to Mr. Riehl before he died.  Appellants dispute the widow's right to death benefits, however, upon the ground that the undisputed evidence indicates that Mr. Riehl died not from heart disease but from cancer, that there is no contention that his cancer arose out of his employment, and that the cancer progressed to its fatal conclusion without acceleration from the heart condition.  It is thus appellants' contention that the award is not sustained by substantial evidence.

The conclusion that chronic myocarditis was a contributing cause of death depends exclusively upon the death certificates signed by decedent's attending physician, Dr. Frederick J. Stone, and upon his testimony.  In the death certificate which Dr. Stone signed as a vital statistic for the Town of Amherst, it is stated that the disease or condition directly leading to death was " Adeno-Carcinoma of rectum: (Interval Between Onset & Death) : 2 years."  Chronic myocarditis, with an onset interval of ten years, is listed as among the " Antecedent Causes, Diseases or Conditions, if any, giving rise to the above cause ".  In the form of proof of death filed with the Workmen's Compensation Board, Dr. Stone stated in answer to question number 11: " *State the direct cause of death:* Adeno-Carcinoma of rectum." (Italics supplied.)  Question 13: " Give contributory causes, if any ", was answered: " Chronic Myocarditis."  Dr. Stone's theory of myocarditis as a contributing cause was condensed as follows in answer to question 10: " Myocardial insufficiency as a result of the accident of 1941 which was a permanent defect and hastened the death of the patient."  These certificates were introduced as part of the testimony by Dr. Stone.

This opinion evidence needs to be analyzed against the background of the rest of Dr. Stone's testimony in order to determine whether it rises to the level of substantial evidence. In *Matter of Kopec v. Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (304 N. Y. 65, 71), this court said that " Under the test prescribed by our decisions for the judicial review of quasi-judicial determinations, the evidence supporting the findings of an administrative tribunal must be ' viewed in the light of the record as a whole ' (*Matter of McCormack v. National City Bank, supra,* 303 N. Y. 5, 9), since ' Evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony.' (*Matter of Stork Restaurant v. Boland, supra,* 282 N. Y. 256, 274.) " A similar case to the present is *Matter of Bye v. State Ins. Fund* (279 App. Div. 1105) where a medical opinion was disregarded as speculative that death from cancer was hastened by an alleged industrial accident.

The rest of Dr. Stone's testimony deprives his conclusion that death was hastened by myocarditis of any probative force which it otherwise might have. He conceded that there was no relation between Mr. Riehl's cancer of the rectum and his heart condition and that cancer of the rectum, as it existed in his case, is ultimately fatal without regard to any other condition. Dr. Stone's certificate to the Workmen's Compensation Board shows that Mr. Riehl did not die from heart failure, but states that cancer was the " direct cause " of his demise. He testified: " Q. You have no reason for saying the fact he had this myocarditis condition hastened his death a minute? A. I cannot prove that, no." When it is borne in mind that death is conceded to have resulted from cancer and not from heart failure, that the cancer is claimed to have aggravated the heart condition but that there is no testimony that the heart condition aggravated the cancer, the basis for a conclusion that death was hastened by the heart condition is eliminated. Dr. Stone's only explanation of his stated conclusion that the myocarditis was a contributing cause is that the man's cancer put a strain upon an already weakened heart. If he had died from a heart attack, then Dr. Stone's version of the facts might have supported a conclusion that cancer had accelerated his death. But since the precipitating cause of death was cancer and not heart trouble, and there is no

claim that myocarditis caused or contributed to the cancer, it does not help claimant's case to show that his heart was further weakened by cancer more than it would to show that any other vital organ had deteriorated. Perhaps his heart would not have held out much longer; but, impaired or not, it held out long enough so that he died as a direct result of cancer instead of from heart disease — which is what counts here.

After discussing the added strain which this attending physician testified that decedent's cancer caused to his heart, this witness testified: " Q. *But there was nothing in the man's condition that hastened the carcinoma of the rectum, was there? A. No. Q. That developed to an ultimate fatal conclusion? A. That is right.*" (Italics supplied.)

The clear purport of this testimony is that the strain placed upon his system by the cancer might have led to an acute heart failure but did not, and that cancer might have injured a heart which was already damaged. That might have furnished a basis for holding that if the man had died from heart disease, cancer would have been a contributing cause, but it has no tendency to establish that the heart condition was a contributing cause of his death from cancer.

The conclusion contained in Dr. Stone's certificates of death has no greater probative force than the basis on which his testimony shows that it is founded. Expert opinion evidence lacks probative force where the conclusions are " contingent, speculative, or merely possible " (RAPALLO, J., in *Strohm* v. *New York, Lake Erie & Western R. R. Co.*, 96 N. Y. 305, 306; *Briggs* v. *New York Central & H. R. R. R. Co.*, 177 N. Y. 59).

The supposedly " substantial evidence " which has heretofore upheld this award, is simply the statement in Dr. Stone's attending physician's reports that myocarditis accelerated his death from cancer, coupled with the explanation of this conclusion in his testimony. The conclusion contained in his certificates of death has to be analyzed and limited in the light of Dr. Stone's testimony. It has no greater probative force than the grounds on which his testimony shows that it is based. As was said in *Matter of McCormack* v. *National City Bank* (303 N. Y. 5, 9): " there can be no doubt whatsoever that the doctor's surmise of what might have been, may not be regarded as substantial ".

In this instance, even if we were to assume that death had been hastened in some unexplained manner by an aggravation of the heart condition by cancer, Dr. Stone's conclusion would still be speculative upon the point inasmuch as he found himself unable to form an opinion with reasonable certainty concerning any minimum period of time whereby death was accelerated. His statement that he is unable to prove that myocarditis hastened his death by a minute is equivalent to stating that he could not express an opinion with reasonable certainty that death was hastened due to this cause. That reduces his opinion that there was some acceleration to speculation.

The cases of *Matter of Lucarelli* v. *General Ry. Signal Co.* (276 App. Div. 799); *Matter of Lessner* v. *115–119 E. 90th St. Corp.* (278 App. Div. 881), and *Matter of Chambers* v. *Universal Adv. Corp.* (253 App. Div. 854), cited by respondent, all involved situations where death was accelerated by industrial accidents or occupational diseases.

The subject of criminal and civil liability for accelerating death has undergone an extensive and interesting history in the courts. We do not pause to discuss the criminal aspect that is analyzed in *People* v. *Kane* (213 N. Y. 260) except to remark that it is not helpful to a solution of the instant question to cite language from opinions in criminal cases saying that it is murder deliberately to kill a man, notwithstanding that he is already marked for early death by disease. The more nearly applicable precedents concern actions for causing the death of another by negligence. In *McCahill* v. *New York Transp. Co.* (201 N. Y. 221) cited at the Appellate Division, the plaintiff's intestate died from delirium tremens two days after being struck by defendant's taxicab. There was medical testimony, not inherently improbable, that the taxicab accident was the precipitating cause of delirium tremens. If that were true, he would not have died when he did except for the taxicab accident. Recovery of civil damages was allowed, measured by the pecuniary value of the decedent's life to his statutory beneficiaries during the period which, in the judgment of the jury, would have elapsed before death would have caught up with him in any event.

In negligence cases our courts have been loathe to fasten liability for death from accident upon defendants in cases where it has been fairly evident that death has resulted entirely from natural

causes, viz., *Seifter* v. *Brooklyn Heights R. R. Co.* (169 N. Y. 254); *Weber* v. *Third Ave. Ry. Co.* (12 App. Div. 512); *Koch* v. *Fox* (71 App. Div. 288); *Koch* v. *Zimmermann* (85 App. Div. 370); *McQuade* v. *Metropolitan St. Ry. Co.* (84 App. Div. 637); *Morhard* v. *Richmond Light & R. R. Co.* (111 App. Div. 353); *Levy* v. *Mott Iron Works* (143 App. Div. 7); *Fitzgerald* v. *Colt-Stewart Motor Co.* (231 App. Div. 176); *Loes* v. *Poll & Co.* (242 App. Div. 729); *Kwiatkowski* v. *John Lowry, Inc.* (248 App. Div. 459). There is no reason on account of which courts should be more astute to do so in workmen's compensation where recovery cannot be reduced, as awards of damages are required to be in negligence actions, by the shortening of the normal life span due to the incidence of some fatal disease not involving liability.

The order appealed from should be reversed, the award of the Workmen's Compensation Board annulled and the claim dismissed, without costs.

LEWIS, Ch. J., DESMOND, FULD and FROESSEL, JJ., concur with VAN VOORHIS, J.; CONWAY and DYE, JJ., dissent and vote to affirm upon the opinion of HALPERN, J., in the Appellate Division.

Order reversed, etc.