■ In the Matter of the Claim of ROSE L. KORNBLUM, on behalf of Herself and Minor Child, Respondent, against S & S PRODUCE, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by employer and carrier from Workmen's Compensation Board decisions and awards of disability and death benefits. The issue presented is causal relationship. On August 4, 1954, in the course of his employment, decedent struck his head upon a door jamb. According to the history which he later gave to physicians, he was momentarily stunned and shortly thereafter began to suffer from headaches and subsequently from dizziness and loss of equilibrium. He first consulted a physician on August 18. He last worked on September 9 and was hospitalized on September 14. On September 17 an exploratory operation upon the brain was performed and on September 28 a tumor was excised from the brain and a post-operative diagnosis of carcinoma, metastatic to the brain, was made. Apparently the site of the primary tumor was in the lung. Decedent died on October 26, 1954 of bronchopneumonia and carcinoma, metastatic to the brain. The board found that decedent's disability and subsequent death was due to his accidental injuries of August 4 "and their resultant consequences and effects and said operations". In a separate finding, the board held that the accident caused "an aggravation of an underlying brain tumor". A number of medical experts, including the surgeon who performed the operations, denied any causal relationship. For the claimant, Dr. Silver testified that the accident aggravated the brain tumor, "possibly by causing excessive bleeding". There was no evidence of bleeding, however, and on cross-examination the doctor said that he had not "completely" considered the factors necessary to an evaluation of the effects of the trauma. We must regard as unsubstantial his testimony as to aggravation. Dr. Heller believed that "the accident was a trigger mechanism which precipitated this man's rapid decline" and that the various operative procedures "did the same". Dr. Kaufman expressed an opinion that the history of the trauma necessitated the diagnostic procedures and that these and the other operative procedures hastened death. Dr. Ant testified that, in his opinion, the trauma to the head caused congestion within the right hemisphere which caused pain in the head and "led to bringing about the diagnostic procedure of the ventriculogram." He considered that the procedures undertaken were necessary but caused additional trauma and "naturally it had an effect upon hastening the death of the patient." Viewing as a whole the medical evidence adduced on behalf of claimant, it seems clear that the traumatic effect of the surgery performed upon decedent was the true basis of the conclusions expressed. While one doctor testified as to

the effect of the industrial accident as a precipitant of decedent's decline and another as to its effect in causing a congestion and headache, little or no amplification or explanation followed the doctors' categorical statements of such supposed relationships. Rather, both Dr. Heller and Dr. Ant proceeded, as did Dr. Kaufman, to expand their reasons for the conclusion that the diagnostic and operative procedures hastened death and this conclusion we deem the true purport of their testimony, when read and considered in its entirety. It seems equally clear that this conclusion can be predicated only upon the conjecture that symptoms attributable to the accidental injury, rather than the pre-existing tumor, were those which required surgical investigation. This conjecture could become substance only if we should return, full-circle, to the factor of aggravation, as to which we have found no sufficient evidence. In any event, and whether the theory of relationship rest on aggravation or on new trauma incident to surgery or on an interrelation of the two, the evidence that decedent's death was accelerated seems to us completely insufficient on the entire record. Illustrative of the general vagueness is the fact that no doctor ventured to express an opinion as to any period of time by which death was accelerated. On cross-examination, however, Dr. Ant said that a brain tumor, if not excised, may not cause death for two or three years but might do so in two or three days. The testimony seems to us to emphasize the generally speculative nature of the proof. (See *Matter of Riehl* v. *Town of Amherst*, 308 N. Y. 212, 217.) Decisions and awards reversed and matter remitted to the Workmen's Compensation Board for further proceedings, with costs to appellants against the Workmen's Compensation Board. Foster, P. J., Coon, Halpern and Gibson, JJ., concur.