Van Voorhis, J. (dissenting).
On July 1,1954 the decedent, Anthony Palermo, was involved in an automobile accident while driving a truck for his employer, appellant Samuel Gallucci & Sons, Inc. In order to sustain the award, it is conceded that the onset of the coronary attack from which he died a month later must have set in at the time of this accident. He was thrown from the cab of his truck to the street, and taken to a hospital where the diagnosis was made of contusion of the right elbow and abrasion of the scalp in the frontal and occipital region. X-ray examination of the skull failed to disclose any evidence of fracture, and there was no sign of intracranial pathology. He was referred to his own physician. On the next day (July 2), he called at the office of a Dr. Arnold Nathan—on whose testimony claimant’s recovery depends—who discovered nothing at that time of any cardiac ailment, but made a diagnosis of contusion and abrasion of the right forehead, swelling and abrasion of the right posterior vertex, abrasion of the right lower chest and tenderness and stiffness of the right shoulder. In his report of July 6,1954, under the heading of “ nature and extent of injury”, this doctor noted: “ Cerebral concussion”. Mr. Palermo returned to work as chauffeur on July 12,1954 and continued until July 31, 1954. Dr. Nathan did not see Mr. Palermo after July 2 until July 22, when he came to the doctor’s office with the complaint that he had been hard of hearing in one ear since the accident. He made no complaints about his chest or his heart at that time. Near the end of July Mr. Palermo drove to his summer home at Rocky Point, Long Island. At 3:10 a.m. on July 31, 1954, Dr. Polikronas Kusa was called to the Palermo home in Rocky Point, where he found Mr. Palermo acutely ill, complaining of severe chest pain, short of breath and restless. Dr. Kusa received a history that he had not had *534 a pain of this kind before. Dr. Knsa described this as severe precordial pain. After being administered morphine, Mr. Palermo was taken by auto to a hospital in Port Jefferson, Long Island, where he died at 4:10 a.m., about an hour after Dr. Kusa had been summoned to see him. The death certificate stated coronary occlusion and coronary thrombosis as the cause of death, stating that there was an interval of about one hour between the onset of the coronary and death.
An autopsy was performed under the supervision of the Suffolk County Coroner, Dr. P. Jerome Laviano, by Dr, Frederick Weinberg who is the pathologist of the John T, Mather Memorial Hospital at Port Jefferson. Dr. Laviano testified, from a study of what was revealed by the autopsy, that the decedent’s heart showed slowly progressive degeneration. The fatal thrombosis or blood clot was disclosed by the incision to be relatively fresh as indicated by its reddish color. “ We could place the time as possibly two or three days, maybe one week, but certainly not longer than two weeks, definitely not longer than two weeks. This is indicated by the materials that form that thrombus while a person is alive and by the retention particularly of the color which at first is quite red, but, with the passage of the time, changes, and this particular thrombus was reddish-brown. It was predominantly red showing that a short time had elapsed. In view of the fact that the accident was one month prior to the death and that a careful and broad analysis of the microscopic findings would not permit more than two weeks, considering all conditions, I feel then that this thrombus was not due to the accident but was something that developed later.” So testified the Coroner, who added that although the heart and other contents of the chest cavity were shaken up in his fall from the truck on July 1, the autopsy gave no evidence of a contusion or hemorrhage to the heart or coronary vessels.
Against these autopsy findings of facts which are not and cannot be disputed, made by disinterested witnesses whose factual testimony is conclusive in the absence of contradiction (Hull v. Littauer, 162 N. Y. 569, 572; Second Nat. Bank v. Weston, 172 N. Y. 250, 258), the only testimony of' causation adduced to support the claim is by Dr. Nathan who, it will be recalled, professed no inkling that any cardiac trouble was involved when he examined Mr. Palermo at his office on July 2 *535 or July 22, 1954, three weeks after the automobile accident had occurred. Dr. Nathan did not venture to go farther than to testify that there was a chance that the trauma on July 1 produced heart injury, and his reasons for this alleged possibility are wholly speculative. His reasoning, unrelated to physical findings of what actually happened to this man, was that hitting the pavement when thrown from a truck produces a sudden compression in the chest and a sudden rise in the chest cavity pressure. This was stated to produce “a contrecoup force” pressing the heart up against the chest wall. He said: “ The impact there will easily injure the vessels which are on the surface of the heart. Coronaries lie close to the surface and produce an injury to the artery, particularly if it is sclerotic, as this one was. This then results in a reaction where we have the production of or clotting of blood within the vessel wall at the site of the injury. And we have the resultant coronary occlusion. ’ ’
He declined to testify in answer to a question by claimant’s counsel that he believed with reasonable certainty that these sequences of events took place in Mr. Palermo’s case, merely that there is a chance that they might have done so. Medical opinion evidence has no greater probative force than the grounds on which the testimony shows that it is based. It must be viewed in the light of the record as a whole, and evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony (Matter of Kopec v. Buffalo Brake Beam-Acme Steel & Malleable Iron Works, 304 N. Y. 65, 71; Matter of Riehl v. Town of Amherst, 308 N. Y. 212, 215-216). A question of fact is not presented, in our view, between the testimony of Dr. Nathan and the Coroner, Dr. Laviano. The Coroner was testifying to incontrovertible facts as disclosed by the autopsy. Dr. Nathan, who had not the slightest idea when he examined Palermo on July 22 that the onset of a coronary attack had set in three weeks before, was speculating on what might have happened if the event had occurred differently from the manner in which the evidence established that it did. His testimony does not purport to have been directed at the condition of this decedent, Anthony Palermo. He gave a general lecture. When confronted with the facts of this ease in examining the slides made by the autopsy, the most *536 that he was able to say was that in his opinion the onset of this coronary was more than 48 hours prior to his death on July 31.
This is too heavy a load for section 21 of the Workmen’s Compensation Law to bear. The presumption provided by this section “ ‘ cannot be used as a substitute for actual proof ’ ” (Matter of McCormack v. National City Bank, 303 N. Y. 5, 11, quoting Matter of Wilson v. General Motors Corp., 298 N. Y. 468, 472). “The doctor’s surmise of what might have been, may not be regarded as substantial ”. (Matter of McCormack v. National City Bank, supra, p. 9.) “ The substantial evidence in this record is against causal relation ’ ’ as the Compensation Referee stated.
The order of the Appellate Division should be reversed and the claim dismissed.
Judges Desmond, Dye and Froessel concur with Chief Judge Conway; Judge Van Voorhis dissents in an opinion in which Judges Fuld and Burke concur.
Order affirmed.