In the Matter of the Claim of TERESA AMOROSO, Respondent, v. TUBULAR & CAST PRODUCTS MANUFACTURING COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and carrier from awards of disability compensation and death benefits. Decedent's disability and subsequent death were due to carcinoma of the right lung. The only question presented is whether the record contains substantial evidence that the carcinoma of the lung was causally related to decedent's employment. The employer manufactured plumbing specialties and decedent was a foreman in the plating and polishing department. He had been engaged in this line of work for 40 years, the last 17 being for this employer. In connection with the work a large number of acids and solutions were used, including nickel sulphate and chromic acid. Various types of fans were used in the room where these solutions were used to carry off any fumes produced. The Division of Industrial Hygiene conducted an investigation of the employer's premises in connection with this case, and reached the conclusion: "It would appear unlikely that the claimant had sufficient exposure to any of the above substances to have caused a carcinoma of the lung." From medical histories given by decedent during his lifetime it appears that he had smoked 20 cigarettes per day for 20 years, and 40 cigarettes per day for approximately another 20 years. The record consists almost entirely of medical reports and testimony. Numerous doctors at numerous hearings and rehearings, expounded at such great length concerning the theories, beliefs and disbeliefs as to the " possible" cause of lung cancer, that it is impracticable to discuss such evidence in detail here. The medical evidence seems to be in accord that nickel and chromium are the two most likely irritants and that, if inhaled in injurious quantities the metal would remain in the tissues. Yet microscopic and spectographic tests of tissues obtained on autopsy revealed no evidence of such substances. Of course doctors called by appellants testified unequivocally against causal relationship. One of claimant's doctors, assuming that claimant inhaled chromic and nitric acids, testified, " then I would assume that inhalation of a chronic irritant over a period of 17–18 years would be a contributing factor. What the specific cause of chronic bronchogenic caricinoma is, neither I or anybody else can say." Claimant's operating surgeon, a cancer specialist, testified: " I do a good deal of speaking about cancer of the lung and one of the most important factors is what causes it. While I have 2550 cases, I don't know the cause of cancer of the lung." An impartial specialist concluded his report with: " In the opinion of this reviewer, the possible contributory roles of chromates and/or nickel compounds to the etiology of the pulmonary cancer in this instance cannot be precluded." This type of negative evidence may not be considered as postive evidence of a fact. An expert who had never seen the decedent testified hypothetically to an opinion of causal relationship. However, reading all of his testimony, it may be summarized as an opinion that the possibility of the exposure as a contributing factor may not be ruled out. Moreover, he testified that he had never treated a case of bronchogenic carcinoma which he felt was

due to chromium. His testimony was based upon literature which related to the manufacture of chromates and handling the substance in solid or dust form, which decedent never did. Upon reviewing the record as a whole we do not think it is a matter of weighing the evidence and are constrained to hold that the medical evidence offered in behalf of claimant does not rise to the level of substantial evidence of causal relationship. (*Matter of Miller* v. *National Cabinet Co.*, 8 N Y 2d 277; *Matter of Riehl* v. *Town of Amherst*, 308 N. Y. 212.) Awards reversed and claims dismissed, without costs. Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ., concur.