■ In the Matter of the Claim of EDWARD O. REICHEL, Respondent, v. GENERAL ELECTRIC Co. et al., Appellants, and SPECIAL DISABILITY FUND, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.— HERLIHY, P. J. Appeals by the employer, its insurance carrier, and the Special Disability Fund from a decision of the Workmen's Compensation Board filed October 4, 1968, which awarded compensation benefits to claimant for the period of October 20, 1964 to February 5, 1965. Appellants assert that claimant voluntarily withdrew from the labor market when he retired on August 1, 1966, but this issue would be premature as no award is contained in the record for the period subsequent to retirement and, further, this argument was not presented to the respondent board. (See *Matter of Hedlund* v. *United Exposition Decorating Co.*, 15 A D 2d 973, mot. for lv. to app. den. 11 N Y 2d 646.) Appellants further contend that the record does not contain substantial medical evidence to support the finding of the board that there was a causally related continuing partial disability subsequent to October 20, 1964. On June 10, 1964 the claimant fell in the course of his employment: "I landed on my feet, stiff-legged; I think I went over backwards. I hit the back of my neck and head on

the job back of me." Claimant's attending physician, Dr. Reich, first diagnosed a " sprain and contusion of the back". On June 26, 1964 this doctor noted "aggravation of his neck complaints following this recent fall". On July 15, 1964 Dr. Reich observed that claimant's back problems "now are the same as they were prior to this fall ". However, neck pain, dizziness and headaches persisted. On July 13, 1964 claimant was examined by Dr. Reynolds who found a chronic neck strain that could "well be due to his two falls". (Claimant had fallen in 1959 and injured his back.) Dr. Cassidy examined the claimant on October 5, 1964 and he diagnosed a chronic cervical strain, but expressed no opinion in his report as to causation. Dr. Reich, the claimant's doctor, testified that the accident caused the pain in the claimant's neck following the fall and as of the time of the hearing the claimant continued "to have marked restriction of motion" and also "you have demonstrable loss of motion and that is not subjective". The claimant's current disability or condition: " continues to complain of neck pain, restricted motion of the neck and a primary dizziness, especially when he extends or moves his head backward". It was Dr. Reich's opinion that the continuing headaches and dizziness were on a vascular basis, however that there was connection between the dizziness and headaches and the restricted motion of the claimant's neck. While there is some equivocation in the testimony of Dr. Reich as to pre-existing hypertension and the possibility of headaches and dizziness resulting from that condition, his testimony in sum is sufficient to establish that the accident of June 10, 1964 caused an injury in the area of the claimant's neck which resulted in a restriction of motion which in turn caused an aggravated headache and dizziness in the claimant and that this condition was present at the time the doctor testified in this case. Dr. Burnett, testifying on behalf of the carrier in answer to a question as to whether claimant's job was changed because of high scaffolds, stated, "That is not the only basis. From his complete record I had information that he had posterior cerebellar artery syndrome, manifested by severe vertigo, probably due to arteriosclerosis, and aggravated by neck strain." Dr. Cohen, also testifying on behalf of the carrier, was asked the following question : " Based on your examination of the patient do you have an opinion with a reasonable degree of medical certainty whether the alleged complaints of headaches and dizziness are on a vascular or functional basis, or on the basis of any orthopedic disability of any sort? " To which he answered: "I was unable to find any neurologic basis for these complaints of headaches and dizziness. He did have a chronic cervical sprain, mild. That was my feeling, that he did have a mild cervical sprain, as listed on my report and occasionally a patient with a cervical sprain will have accompanying headaches and/or dizziness, but they will clear up once the cervical sprain has cleared." It was his further opinion that if the headaches and dizziness were present beforehand, then he would conclude that they were present and they were independent of the accident of June 10, 1964. Accordingly, the present record, considered in its entirety, contains substantial medical evidence to support the finding of the board as to a disability continuing through the period of October 20, 1964 to February 5, 1965. (See *Matter of Ernest* v. *Boggs Lake Estate,* 15 A D 2d 698, affd. 12 N Y 2d 414.) There is also sufficient evidence that during the period in question the claimant was assigned different work than he had performed prior to the accident and was on a lower pay scale. Decision affirmed, with costs to the Workmen's Compensation Board. Herlihy, P. J., Greenblott and Cooke, JJ., concur in memorandum by Herlihy, P. J.; Reynolds, J., dissents and votes to reverse and dismiss the claim. Reynolds, J. (dissenting). I cannot agree that the record in this case contains substantial medical evidence to sup-

port the board's finding that claimant's continued partial disability after October 20, 1964 was causally related to the accident of June 10, 1964. "Expert opinion evidence lacks probative force where the conclusions are 'contingent, speculative, or merely possible'" (*Matter of Riehl* v. *Town of Amherst,* 308 N. Y. 212, 216). Admittedly, the use of words like "it is conceivable" or it "could have" does not, in and of itself, render medical testimony speculative if the physician's testimony, as a whole, indicates that his professional judgment was that causality existed (*Matter of Ernest* v. *Boggs Lake Estates,* 12 N Y 2d 414). But such is not the case here, as none of the medical witnesses stated, as a matter of professional judgment, that claimant's symptoms were either caused or aggravated by the accidental injury of June 10, 1964. A brief summary of the medical testimony reveals that Dr. Burnett testified that he had "no opinion" as to the cause of claimant's complaints. Dr. Reynolds testified that claimant had given a history of lightheaded sensations and pressure in the head beginning in 1959 and that in his opinion claimant was suffering from hypertension, which pre-existed and was unrelated to the accident. At most claimant's counsel succeeded in having him admit only that "It is conceivable that the June 10th accident aggravated his preexisting symptoms." Dr. Cohen, an orthopedic surgeon, testified that claimant "had recovered from any injuries to his back which he sustained as a result of that accident" and that "if the headaches and dizziness were present beforehand [as Dr. Reynolds had testified], then I would conclude that they were present and were independent of his accident of June 10, 1964". Dr Cassidy, a neurologist, testified that he found "no disability, neurological disability in the patient" which is related to the accident of June 10; and that "I have no way of knowing whether those complaints were aggravated by this fall, caused by this fall, or in any way influenced by this fall." The majority opinion snatches at portions of the testimony of these physicians as favoring causal relationship, but it is abundantly evident that all clearly and unequivocally denied or were unwilling to state professionally that such was the case. The only expert who could conceivably be said to have testified in favor of causal relation was claimant's attending physician, Dr. Reich. When asked whether the June 10, 1964 accident was a competent and producing cause of the disability, he replied: "all I can say about the injury sustained in June is that this individual has had hypertension prior to this and he had some problems concerning headaches prior to this. If anything, it could have only been an aggravation of a condition present." He then even further qualified this opinion by stating: "I feel that as Mr. Walworth [carrier's attorney] pointed out, the answers to some of these symptoms, the headaches and dizziness, are rightfully the business of Dr. Cassidy, who I had see him in consultation." Thus, the only possible medical testimony supportive of causal relation is Dr. Reich's statement that the accident "could have" aggravated an existing condition, and Dr. Reynolds' statement that "it is conceivable" that the accident aggravated claimant's symptoms. Dr. Reich's testimony was further weakened when he deferred to Dr. Cassidy's opinion, which was that he had "no way of knowing whether those complaints were aggravated by this fall". The majority opinion is thus most charitable when it states that there is "some equivocation" in Dr. Reich's testimony. His testimony is rather an example of pure and complete equivocation and speculation and thus without probative value. On viewing the record as a whole, as we must, there is just simply no probative medical opinion in favor of causal relation, and thus there is no evidence to support the board's decision. Accordingly, I vote to reverse and dismiss the claim.